**The below described is SIGNED.**

**Dated: September 26, 2005**

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**Thomas Michael Tuttle and**<br>**Heather Lee Tuttle,**<br>        Debtors. | Bankruptcy Number 05-26753<br>Chapter 7<br><br>Hon. William T. Thurman |

## MEMORANDUM DECISION SUSTAINING TRUSTEE'S OBJECTION TO EXEMPTION

The matter before the Court is the Trustee's Objection to Exemption. An evidentiary hearing was conducted before the Honorable William T. Thurman, Bankruptcy Judge, on September 15, 2005 at 2:00 p.m., in his courtroom in St. George, Utah. Present was Stephen Rupp, the Chapter 7 Trustee of Tuttle's Custom Cabinet & Furniture, Inc., and Weston White, counsel for Debtors. The Court submits this Memorandum Decision, which will constitute its findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.[1]

---

[1] Fed. R. Civ. Pr. 52 is extended to bankruptcy proceedings by Bankr. R. Pr. 7052.

The Debtors claim certain items of equipment as exempt from being administered in the bankruptcy of Tuttle's Cabinet. The Trustee objects on the basis that the equipment belongs to the Debtors' corporation and therefore is not available for personal exemptions. The Court holds that the equipment is property of Tuttle's Cabinet's estate, and sustains the objection of the Trustee.

## FACTS

On November 8, 2004, Tuttle's Custom Cabinet & Furniture, Inc. ("Tuttle's Cabinet") filed for chapter 7 bankruptcy relief with this Court. Tuttle's Cabinet is a closely-held corporation owned and operated by Thomas and Heather Tuttle ("The Tuttles"). At the hearing on this matter, Heather Tuttle represented that Tuttle's Cabinet specialized in building custom cabinets, furniture, and woodworking. Thomas and Heather Tuttle filed for chapter 7 bankruptcy relief on April 28, 2005.

In their individual bankruptcy case, the Tuttles claim exemptions for several tools and machinery used by Tuttle's Cabinet in the course of business, but which were purchased before incorporating Tuttle's Cabinet.[2] At all times during operation of Tuttle's Cabinet, these tools were located at the place of business for Tuttle's Cabinet. The Tuttles argue that these tools are their individual property because the tools were purchased before Tuttle's Cabinet was incorporated.

---

[2] The property in question was not scheduled on the Tuttles' original schedules filed with the Court. In the Debtor's amended schedules, filed with the Court on June 24, 2005, the Tuttles listed the following as property on Schedule B and claimed the following as exempt on Schedule C: a band saw, an upright belt sander, a compressor, a surger, a rigid table saw, two nail guns, a spray system, fifteen clamps, a planer, a unisaw, and miscellaneous hand tools ("the tools"). The claimed exemption value for these tools is $7000. However, the same tools were listed as assets of Tuttle's Cabinet. An amendment was not filed by the corporation deleting this as property until September, 2005.

The Tuttles also claim that the tools are encumbered with a security interest granted to David Cannon, Heather Tuttle's father. The Tuttles claim that in exchange for loans given by Mr. Cannon over a period of several years, the Tuttles granted Mr. Cannon a security interest in their tools and machinery. The alleged security interest was never memorialized in a writing, and Mr. Cannon never attempted to perfect his security interest.

On July 22, 2005 the Trustee filed an Objection to Debtor's Claim of Exemptions. The Objection is the subject of this Decision. The Trustee argues that the tools are the property of Tuttle's Cabinet, and cannot be claimed as exempt by the Tuttles and that the Tuttles should be administered in the Tuttle's Cabinet case.

In support of his position, the Trustee points to several factors indicating that the tools belong to the corporation. He argues that Tuttle's Cabinet claimed tax benefits for depreciation on the listed tools in prior years.[3] The Trustee also points out that the Schedules and Statement of Financial Affairs originally filed by Tuttle's Cabinet on November 8, 2004, specifically list the tools now claimed as exempt by the Tuttles.[4]

The Court also has concerns about the accuracy of papers filed with this Court. As principals of Tuttle's Cabinet, Thomas and Heather Tuttle executed the bankruptcy statements for Tuttle's Cabinet under penalty of perjury. The first statements and schedules filed by Tuttle's Cabinet in November 2004, list the tools as corporate assets. The Tuttles amended the

---

[3]No documents were received at the September 15, 2005 hearing to support this assertion. Accordingly, the Court cannot weigh this alleged fact in its analysis.

[4]The Plaintiff in this adversary proceeding is the chapter 7 Trustee for Tuttle's Cabinet's bankruptcy case. The trustee administering the Tuttles' individual case is not a party to this adversary proceeding, nor did he receive notice of this hearing.

3

corporate schedules to omit the tools only two weeks before the hearing on the Trustee's Objection. At the hearing, the Tuttles testified that the corporate schedules listed the tools as corporate assets through mere inadvertence.

## JURISDICTION:

The Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b) and 28 U.S.C. §§ 157(b)(2)(B). Venue is proper in the Central Division of the District of Utah under 28 U.S.C. 1409.

## ANALYSIS

11 U.S.C. § 522(b) allows a debtor to claim specific types of property as exempt from the bankruptcy estate.[5] In Utah, a debtor may claim up to $3500 in exemptions for tools of a debtor's trade.[6] Of course, in order for a debtor to properly claim an exemption, the property at issue must be property of the debtor.[7]

The Trustee argues: 1) that The Tuttles are not entitled to claim an exemption for the tools because the tools are not owned by the Tuttles and 2) the Trustee can avoid a security interest in the tools owned by David Cannon under 11 U.S.C. § 544, and step into the shoes of Mr. Cannon's security interest as against the Tuttles under § 550.

The Court finds that either the tools are owned by Tuttle's Cabinet as a matter of law under the alter ego theory, or the Tuttles are estopped from denying the corporation's ownership. The Court further finds that Mr. Cannon did not have a valid security interest in the tools. As

---

[5] All statutory citations hereinafter are to the Bankruptcy Code under Title 11, unless otherwise specified.

[6] Utah Code § 78-23-8(2).

[7] 11 U.S.C. 522(b)(2005); 11 U.S.C. 541 (2005).

such, the Trustee cannot enforce any security interest against Debtor's estate. Accordingly, the Tuttles cannot now claim an exemption for the tools. Trustee's Objection to Exemption should be sustained.

### 1. The Tools are not Property of the Tuttles

Generally, courts must respect the distinction between personal and corporate property.[8] But courts will ignore this distinction where corporate formalities would work an injustice on third parties.[9] Under the alter ego theory, courts may ignore the boundaries between a corporation and its shareholders to better reflect reality.[10] "When corporate and individual business interests are so intertwined that the corporation is indistinguishable from the individual, the alter ego doctrine operates to treat the assets of both as corporate property."[11] As an example, in In re Telemark Management Co., the court held that a liquor license technically owned by the individual owner of the debtor corporation should be considered property of the corporate estate because the corporation never treated the license as being individually owned.[12] The court specifically pointed out that the corporate debtor never made rental payments to the individual owner of the license nor did it make separate record-keeping notations separating the

---

[8]Transamerica Cash Reserve, Inc. v. Dixie Power and Water, Inc., 789 P.2d 24, 26 (Utah 1990).

[9]Id.

[10] See e.g. Ringwood v. Foreign Auto Works, Inc., 786 P.2d 1350 (Utah App. 1990)(applying the alter ego theory to hold the principals of a corporation liable on a contract where the plaintiffs were led to believe they were contracting with the principals as individuals).

[11]Gordon Car & Truck Rental, Inc. v. Gordon (In re Gordon Car & Truck Rental, Inc.), 65 B.R. 371 (Bankr. N.D. N.Y. 1986)(citing In re Telemark Management Co., 43 B.R. 579 (Bankr. W.D. Wis. 1984).

[12]In re Telemark Management Co., 43 B.R. at 588.

license from corporate property.[13]

The alter ego theory governs this case. Upon forming Tuttle's Cabinet, the Tuttles delivered all of their tools to the place of business for Tuttle's Cabinet. The tools remained at Tuttle's Cabinet's place of business throughout its existence. Tuttle's Cabinet used the tools on a regular basis in serving customers and generating income. It is unclear whether Tuttle's Cabinet could have continued to operate without the tools. Further, there is no evidence that Tuttle's Cabinet treated the tools differently from other corporate property. Tuttle's Cabinet did not make lease or rental payments to the Tuttles for use of the tools. There is also no evidence that Tuttle's Cabinet treated the tools differently in corporate records. Under the alter ego theory, the tools should be treated as property of Tuttle's Cabinet. Corporate and individual property was so intertwined that corporate property was indistinguishable from the Tuttles' property.[14]

Alternatively, the tools may not be considered property of the Tuttles under the doctrine of equitable estoppel. When individual property is held out to creditors as corporate property, the true individual owners of the property are estopped from later stating that the property is not corporate property.[15] Thus, in Bank of Marston v. Marachowsky, the Supreme Court of

---

[13] Id.

[14] See In re Telemark Management Co., 43 B.R. at 586.

[15] In re Gordon Car & Truck Rental, Inc., 65 B.R. at 377. Although the formal requirements for equitable estoppel require a showing that creditors in fact relied on representations of ownership, courts in effect assume such reliance absent contrary evidence. See In re Telemark Management Co., 43 B.R. at 587 (applying equitable estoppel where the individual owner represented that real property was owned by the individual's corporation, but without any discussion of creditors' reliance); *Accord* In re Gordon Car & Truck Rental, Inc., 65 B.R. at 377; Bank of Mauston v. Marachowsky, 258 Wis. 599, 602 (1951).

6

Wisconsin held that a corporate officer was estopped from claiming ownership of real property when the officer's closely held corporation used the real property as an oil plant for several years.[16]

Under the doctrine of equitable estoppel, the Tuttles are estopped from claiming ownership of the tools. At the inception of Tuttle's Cabinet, the Tuttles delivered the tools to the place of business for the corporation and left the tools there until its bankruptcy. The tools were used on a regular basis by Tuttle's Cabinet in furthering its corporate purpose. In treating the tools as corporate property, the Tuttles effectively represented to any creditor or observer that Tuttle's Cabinet owned the tools. To a creditor, it would appear that the Tuttles had simply made a capital contribution of the tools in exchange for corporate equity.[17]

The circumstances surrounding these bankruptcy proceedings also suggest that estoppel is appropriate in this case. Although the Tuttles testified that they listed the tools as corporate assets on the statements for Tuttle's Cabinet, they did not amend the schedules until two weeks before the hearing on Trustee's Objection. The Tuttles signed these statements and schedules under penalty of perjury. The court takes this oath seriously. The Tuttles' belated correction in correcting this alleged mistake further persuades the Court that the Tuttles are estopped from claiming ownership of the tools.[18]

---

[16] 258 Wis. at 602.

[17] See 16 Fletcher Cycl. of Private Corp. § 7919 (2005)(stating that courts look to the following factors in deciding whether a transfer is a capital contribution: whether the shareholder was in a position to control corporate affairs; whether the advances were intended to be repaid in the ordinary course of business; and whether the capitalization of the corporation was unreasonably small in view of the nature and size of the business).

[18] The issue of these other items of property are not before the court for consideration. The time for objecting has passed and it is assumed that they are not claimed by the Trustee.

The Court specifically excepts the surger from this ruling, as the policy underlying the alter ego theory and equitable estoppel does not apply to this machine. At the September 15, 2005 hearing, Mrs. Tuttle testified that the surger is her sewing machine. She stated that she uses it for personal purposes, and that the corporation never uses it for business. The surger cannot be considered corporate property under the alter ego theory if the corporation never used it in the course of business. Further, the surger cannot be considered corporate property under a theory of equitable estoppel because, given the business purpose of Tuttle's Cabinet, a creditor could not reasonably assume that the surger was corporate property.

Under the alter ego theory, or alternatively, under the doctrine of equitable estoppel, the tools are not property of the individual The Tuttles' estate. Accordingly, The Tuttles may not claim an exemption for the value of the tools.

### 2. Mr. Cannon Does Not Have a Valid Security Interest in the Tools:

Under Ut. St. § 70A-9a-203, a security interest is enforceable in goods not in the creditor's possession if: 1) value has been given; 2) the debtor has rights in the collateral; and 3) the debtor has authenticated a security agreement. Authentication typically requires a writing which complies with the statute of frauds.[19] Even where the statute of frauds is satisfied, a security interest is only valid where there is a writing sufficient to constitute a security agreement.[20] Accordingly, even though the statute of frauds is satisfied by judicial admission, a

---

[19] Ut. St. §§ 70A-9a-102(a)(7) 70A-9a-203(cmt 3).

[20] See Ut. St. § 70A-9a-102(a)(7)(requiring a signature for authentication of a security agreement).

security interest is only valid where a proponent can produce a writing.[21]

The Trustee argues that the Tuttles are not entitled to claim exemptions for the tools because he can avoid Mr. Cannon's security interest, and enforce it against the Tuttles' estate under § 550. This argument is only valid if David Cannon has a valid, un-perfected security interest in the tools. David Cannon does not have a valid security interest in the tools. Both the Tuttles and Mr. Cannon testified at the September 15, 2005 hearing that their agreement regarding the tools was never reduced to writing. Although the Tuttles admit that a security interest was created, the admission is not sufficient to create a security interest. The admission might satisfy the statute of frauds, but it cannot evidence a security interest. Accordingly, Trustee's arguments under §§ 544 and 550 cannot bar the Tuttles' claim of exemptions for the tools.

## **CONCLUSION**

Based on the foregoing, the Trustee's Objection to Exemption should be sustained except as to the surger.

_____End of Document_____

---

[21] See Baldwin v. Vantage Corp., 676 P.2d 413 (Utah 1984)(holding that judicial admission can satisfy the statute of frauds).



_____ooo0ooo_____

## SERVICE LIST

      Service of the foregoing **ORDER SUSTAINING TRUSTEE'S OBJECTION TO EXEMPTION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Weston J. White
189 N. Main Street
P.O. Box 2408
St. George, UT 84770

Thomas M. And Heather Tuttle
400 Shangrala
Toquerville, UT 84745

Stephen Rupp, Trustee
170 South Main Street, Suite 800
Salt Lake City, UT 84101